IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Renee Skotnik, | ) | |
|     Plaintiff, | ) | |
| | ) | No. 2015 CV 11619 |
| v. | ) | |
| | ) | Honorable Sharon Johnson Coleman |
| Moraine Valley Community College and the Board of Trustees of Moraine Valley Community College, | ) ) ) | Magistrate Judge Jeffrey Cole |
| | ) | |
|     Defendants. | ) | JURY TRIAL DEMANDED |

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSE TO PLAINTIFF'S COMPLAINT**

**NOW COMES** the Defendant Moraine Valley Community College and the Board of Trustees of Moraine Valley Community College (the "College"), by and through its attorneys, John B. Murphey of Rosenthal, Murphey, Coblentz & Donahue, answering Plaintiff Renee Skotnik's Complaint as follows:

**STATEMENT OF FACTS**

1. Plaintiff, Renee Skotnik ("Skotnik") was employed at Moraine Valley Community College in 1987. Her first position was as a Registration Services representative.

**ANSWER:** The College admits this allegation.

2. During her employment, she eventually assumed a position as a secretary.

**ANSWER:** The College admits this allegation.

3. While working as a secretary, she was represented by a union, the Moraine Valley Support Staff Association.

**ANSWER:** The College admits this allegation.

4. She was active in the work of the union and worked on grievances on behalf of union members.

**ANSWER:** The College admits this allegation.

5. In the winter of 2012-2013, Skotnik began to suffer from symptoms of psychological illness. She was diagnosed with panic disorder and was prescribed medication to assist her in controlling the symptoms.

**ANSWER:** The College lacks information sufficient to form a belief as to the truth of this allegation and accordingly denies it.

6. Additionally, she was advised on plans to transfer her work location with the college which would change not only the pace of her work but her job duties as well as work hours.

**ANSWER:** The College lacks information sufficient to form a belief as to the truth of this allegation and accordingly denies it.

7. The prospect of the change distressed Skotnik and her symptoms worsened.

**ANSWER:** The College lacks information sufficient to form a belief as to the truth of this allegation and accordingly denies it.

8. She was prescribed medication in the form of anti-anxiety drugs, and on February 28, 2013, her physician wrote a letter stating that the change in her job duties, location or hours would be detrimental to her condition.

**ANSWER:** The College lacks information sufficient to form a belief as to the allegation with respect to medication. As to the allegation relating to the February 2013 letter, the College admits that it received a letter dated February 28, 2013 from a doctor Piyush C. Buch

2

stating that a "change in [Plaintiff's] job duties, location or hours at this time would be detrimental to her condition."

9. On March 6, 2013, Skotnik requested an accommodation under the Americans with Disabilities Act to the change in her work shift and location. She further advised that she was seeking Family and Medical Leave Act time.

**ANSWER:** The College admits that on March 6, 2013, the College received an e-mail requesting a change "in my work shift and work location." The College admits that said communication also advised that Plaintiff "applied for the Family Medical Leave Act."

10. On March 10, 2013, Skotnik received a reply from Human Resources requesting a release to allow the college to review her physician's file regarding the request for accommodation.

**ANSWER:** The College admits this allegation, except that the notification was on March 7, 2013 instead of March 10, 2013.

11. The release was provided and the physician provided a form indicating that he had been treating Skotnik since June of 2012. The diagnosis was panic disorder treated with medication.

**ANSWER:** The College admits this allegation, except that the diagnosis was simply "panic disorder."

12. On March 27, 2013, Skotnik was granted intermittent Family leave through March 24, 2014.

**ANSWER:** The College admits this allegation.

13. On March 28, 2013, Skotnik's physician wrote to the college Benefits Administration and advised that Skotnik remained under his care and that her diagnosis was

3

major depression disorder with anxiety fears. He noted that her job duties were changing, and she was unable to handle stress in a short period of time.

**ANSWER:** The College admits this allegation.

14. On August 8, 2013, Skotnik's physician wrote another letter regarding her stress at work and completed another questionnaire about her condition which listed the diagnosis as major depression.

**ANSWER:** The College admits this allegation.

15. On September 19, 2013, the Human Resources department notified Skotnik that she could return to work and would be provided with a reasonable accommodation to transition to different location.

**ANSWER:** The College admits this allegation.

16. On October 11, 2013, Skotnik underwent an independent medical evaluation by the Advocate Disability Council. A meeting was scheduled for October 30, 2013 for a discussion of the evaluation with Skotnik.

**ANSWER:** The College admits this allegation.

17. On November 7, 2013, Skotnik's physician wrote a letter stating that she could return to work without restriction on November 11, 2013.

**ANSWER:** The College admits this allegation.

18. On November 1, 2013, a report was completed of a psychological evaluation of Skotnik by Advocate Health Nancy Gardner, Ph.D.

**ANSWER:** The College denies this allegation. Answering further, the College states that the College received a report on November 11, 2013 from licensed clinical psychologist Nancy Landre. This report concluded, *inter alia*, that Plaintiff "is currently fit for duty and does

not pose a threat to herself or others . . . Ms. Skotnik's major depression and anxiety disorders are similarly not currently of sufficient magnitude to render her disabled."

19. The report noted in September of 2013, an evaluation had concluded that Skotnik suffered from a qualified disability, major depressive disorder and anxiety disorder.

**ANSWER:** The College admits this allegation.

20. The report further noted that due to her disability, Skotnik had requested a reasonable accommodation that her relocation occur in a gradual fashion.

**ANSWER:** The College admits this allegation.

21. The report concluded that Skotnik was fit for duty and recommended that she be relocated to a location that would allow her to function. This result was described as a reasonable request that should be accommodated.

**ANSWER:** The College admits this allegation.

22. On November 8, 2013, Andrew Duren, a Vice President of the college, met with Skotnik and advised her that the relocation of her office and proposed change in job duties would go forward without further consultation with her doctors. He also advised her to cease discussing her work situation with co-employees during non-work hours.

**ANSWER:** The College denies this allegation.

23. Skotnik continued to work through February of 2014.

**ANSWER:** The College denies this allegation.

24. In late November of 2014, Skotnik's symptoms worsened. Although she took anti-anxiety medication, she began to have anxiety attacks after being told about the changes in her job.

5

**ANSWER:** The College lacks information sufficient to form a belief as to the truth of this allegation and accordingly denies it.

25. In early December, 2013, she filed a charge of discrimination which was acknowledged by e-mail on December 5, 2013.

**ANSWER:** The College admits this allegation.

26. The charge was processed by the Chicago District Office of the Equal Employment Opportunity Commission ("EEOC").

**ANSWER:** The College admits this allegation.

27. On February 4, 2014, Skotnik was called to a meeting at the Moraine Valley Community College. Present at the meeting were Skotnik, Andrew Duren and a representative of the union.

**ANSWER:** The College admits that a meeting was held on February 4, 2014. The College admits that Skotnik, Mr. Duren and a representative of the Union were present. Other individuals were present including the Union attorney and the College's Director of Human Resources.

28. Skotnik was presented with a resignation agreement resigning her employment effective March 31, 2014. It provided that from January 31, 2014 through March 31, 2014, she would be placed on paid administrative leave with her health insurance paid for those months. In exchange, she would release all claims and consent to the dismissal of her EEOC claim against the college.

**ANSWER:** The College admits the allegations.

6

29. Skotnik asked to step out to call a lawyer. Andrew Duren told her that if she left the meeting for any reason without signing the form, she would be immediately fired and lose her health insurance.

**ANSWER:** The College denies these allegations.

30. At that time, Skotnik was panicked despite the medication she took before the meeting. She was anxious and afraid.

**ANSWER:** The College denies these allegations.

31. Skotnik signed the agreement although she did not understand what it meant.

**ANSWER:** The College denies this allegation.

32. She left the building that day and did not return to employment.

**ANSWER:** The College admits this allegation.

33. Following investigation of charge number 440-2014-00287 on March 18, 2015, the EEOC Chicago Regional Director made a determination that the evidence obtained in the investigation established reasonable cause to believe that Moraine Valley Community College discriminated against Skotnik because of her disability by denying her a reasonable accommodation and retaliated against her by discharging her in violation of the Americans with Disabilities Act ("ADA").

**ANSWER:** The College admits this allegation.

34. On September 29, 2015, the U.S. Department of Justice Civil Rights Division issued a notice of right to sue to Renee Skotnik regarding her charges.

**ANSWER:** The College admits this allegation.

35. This suit was timely filed following the receipt by Skotnik of the right to sue letter.

**ANSWER:** The College admits this allegation.

## CLAIMS FOR RELIEF

36. Plaintiff incorporates the preceding paragraphs as though set forth herein.

**ANSWER:** The College incorporates its answers to paragraph 1-35.

37. Plaintiff is an individual with a disability who is capable of performing her job in an acceptable manner with reasonable accommodation.

**ANSWER:** The College denies this allegation.

38. Defendant is an employer as defined by the Americans with Disabilities Act and Rehabilitation Act.

**ANSWER:** The College admits this allegation.

39. Defendant denied Plaintiff a reasonable accommodation and terminated her employment in violation of the law.

**ANSWER:** The College denies this allegation.

40. Plaintiff has suffered economic and other damages as a result of her termination.

**ANSWER:** The College denies this allegation.

## RETALIATION

41. Plaintiff incorporates the preceding paragraphs as set forth herein.

**ANSWER:** The College incorporates its answers to paragraphs 1-40.

42. In December of 2013, Plaintiff filed a charge of discrimination against Defendants with the EEOC.

**ANSWER:** The College admits this allegation.

43. On February 4, 2014, Plaintiff was terminated from her employment.

**ANSWER:** The College denies this allegation.

Case: 1:15-cv-11619 Document #: 9 Filed: 01/26/16 Page 8 of 12 PageID #:27

44. The Plaintiff was terminated in retaliation for filing the EEOC charge in December of 2013.

**ANSWER:** The College denies this allegation.

45. As a result of her termination, Plaintiff suffered economic and other damages.

**ANSWER:** The College denies this allegation.

## AFFIRMATIVE DEFENSE

46. On or about January 22, 2014, the College issued a "Notice of Proposed Disciplinary Action and Pre-Disciplinary Conference" to Plaintiff. This conference was convened among representatives of the College, representative of Plaintiff's Union and Plaintiff herself to review Plaintiff's employment status in light of a number of disciplinary problems which had occurred involving Plaintiff, as outlined in said notice.

47. Attached hereto as **Exhibit 1** and made a part hereof is a true and correct copy of the Pre-Disciplinary Notice issued to Plaintiff.

48. On February 4, 2013, a disciplinary conference was held at the offices of Plaintiff's Union on the College campus. In addition to Plaintiff, present at the meeting were Andrew Duren, College Vice President, Lynn Harrington, College HR Director, Lynn Doulas, the President of Plaintiff's Union and Brenda Pryor, Plaintiff's Union attorney.

49. During the course of that meeting, the parties negotiated a Resignation Agreement with the College.

50. Attached hereto as **Exhibit 2** and made a part hereof is a true and correct copy of the "Resignation Agreement" signed by Plaintiff.

51. Plaintiff received and accepted a number of benefits from the Resignation Agreement:

9

   A. In accordance with Section 2 thereof, Plaintiff was placed on a paid leave of absence from January 31, 2014 through March 31, 2014.

   B. Pursuant to Section 3 thereof, Plaintiff negotiated an agreed-upon reference to prospective employers.

   C. Pursuant to Section 4 thereof, the College agreed that it would not object to any application for unemployment compensation benefits filed by Plaintiff with respect to a potential eligibility period commencing April 1, 2014 or thereafter.

 52. Plaintiff accepted all of the benefits set forth in Section 2, 3 and 4 of the Resignation Agreement.

 53. In exchange for these benefits, Plaintiff released the College from any and all claims arising out of her employment with the College "including, but not limited to any claims arising under collective bargaining agreements, state law or any state, federal, or local anti-discrimination law."

 54. The Section 5 release which Ms. Skotnik executed further provided that Ms. Skotnik agreed to withdraw EEOC Charge No. 440-2014-00287.

 55. Section 5 further provided that Plaintiff "acknowledges that she has reviewed the terms of this Agreement in conjunction with her Union representatives, understands these terms and agrees to be bound by these terms."

 56. The resignation Agreement is valid and enforceable. By virtue of the Resignation Agreement, Plaintiff released the College from any and all claims she may have had against the College, including but not limited to the claims set forth in this lawsuit.

 57. Accordingly, this action should be dismissed pursuant to the terms of the Resignation Agreement.

WHEREFORE, Defendant prays that this Court dismiss Plaintiff's complaint.

**DEFENDANT DEMANDS TRIAL BY JURY.**

                                            Moraine Valley Community College and the Board of Trustees of Moraine Valley Community College

                                            By: /s/ John B. Murphey
                                                          Defendants' Attorney

John B. Murphey
Rosenthal, Murphey, Coblentz & Donahue
30 N. La Salle Street, Suite 1624
Chicago, Illinois 60602
Tel. 312.541.1070
Fax 312.541.9191

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of said filing to all parties listed below:

Anthony Pinelli
Law Office of Anthony Pinelli
53 West Jackson Blvd., Suite 1460
Chicago, Illinois 60604
312.583.9270

Susan M. Pavlow
Law Office of Susan M. Pavlow
53 West Jackson Blvd., Suite 1460
Chicago, Illinois 60604
312.322.0094

/s/    John B. Murphey
ROSENTHAL, MURPHEY, COBLENTZ & DONAHUE
Attorneys for Defendants
30 North La Salle Street, Suite 1624
Chicago, Illinois 60602
Tel. (312) 541-1070
Fax: (312) 541-9191