# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RENEE SKOTNIK, | ) |
| | ) |
| Plaintiff, | ) Case No. 15-cv-11619 |
| | ) |
| v. | ) Judge Sharon Johnson Coleman |
| | ) |
| MORAINE VALLEY COMMUNITY | ) |
| COLLEGE and the BOARD OF TRUSTEES | ) |
| OF MORAINE VALLEY COMMUNITY | ) |
| COLLEGE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Renee Skotnik, brings this action against her former employer, the Moraine Valley Community College ("MVCC") and its board of trustees (collectively "defendants"), alleging that the defendants denied her a reasonable accommodation and terminated her employment based on her disability in violation of the Rehabilitation Act and the Americans with Disabilities Act and terminated her in retaliation for requesting accommodations or filing a charge of discrimination in violation of the Americans with Disabilities Act. The defendants now move for summary judgment, arguing that Skotnik waived her claims by executing a resignation agreement or, alternatively, that Skotnik has failed to establish the existence of genuine disputes of material fact in support of her claims. For the reasons set forth herein, this court grants that motion.

**Background**

The following facts are undisputed unless otherwise noted. Skotnik began working for MVCC in 1985, and worked there until her resignation in 2014. Skotnik was a member of the Moraine Valley Support Staff Association ("the union"), and had previously served as the union's grievance chairperson and as its vice-president. The relationship between MVCC and the union was governed by a collective bargaining agreement that, in pertinent part, provided terminated

1

employees with a multi-step grievance process ending in binding arbitration.  Skotnik, as a former union official, was generally aware of these provisions.

During her employment at MVCC, Skotnik was a part-time clerical employee.  Skotnik had been diagnosed with major depressive disorder prior to the events in question, and had informed MVCC of that diagnosis.  At the start of the 2013–2014 academic year, Skotnik was working in MVCC's Building M.  Later that year, MVCC informed Skotnik that it wished to transfer her to Building T.  MVCC subsequently received a letter from Skotnik's treating psychiatrist, which explained that changes in Skotnik's job hours or placement would be detrimental to her condition because she was unable to handle large amounts of stress in a short period of time.  The letter requested that MVCC "accommodate" Skotnik by keeping her duties and location constant.  Skotnik subsequently submitted to an independent medical examination, which concluded that Skotnik would experience an adverse reaction if moved to a different work setting, but that Skotnik's needs could be accommodated through a gradual shift to her new hours and location at a pace recommended by her treating therapist.  MVCC agreed to this accommodation.

In October, 2013, Skotnik was involved in a verbal and physical altercation with a coworker that resulted in a police response.  Skotnik was also reprimanded in October for leaving campus during her shift without permission.  A number of employees also reported that Skotnik was behaving in an erratic manner that they found unsettling and discomforting.  The evidence suggests that Skotnik began asking coworkers whether they were scared of her.  She also repeatedly called coworkers, at work and at home, to discuss her perception that she was being mistreated by MVCC. On December 20, 2013, Skotnik filed an EEOC charge alleging disability discrimination.  MVCC continued to receive reports regarding Skotnik's behavior in January 2014, including a report that she had again left campus during her shift without permission from a supervisor.  Pursuant to the collective bargaining agreement, MVCC noticed a "pre-disciplinary conference," with the stated

2

reasons for the conference being "[d]isruptive, harassing, and unprofessional behavior," "[l]eaving work without notification and/or permission," and "[u]nsatisfactory performance."

The parties dispute what happened next. The defendants' evidence suggests that the pre-disciplinary conference was held on January 22, 2014, with MVCC Vice President Andrew Duren and Human Resources Director Lynn Harrington present on behalf of MVCC and union president Lynn Doulas accompanying Skotnik. Skotnik, by contrast, does not recall any such meeting and claims that it never occurred. The defendants recount a second such meeting, held on January 31, 2014, between Skotnik, Duran, Doulas, Harrington, and union attorney Brenda Pryor. Skotnik, again, testified that she has no recollection of this meeting.

It is undisputed that Skotnik subsequently contacted union president Doulas and asked for a separation package. Doulas met with MVCC Vice President Duren and requested a severance package for Skotnik that would include a year of health insurance. Duren countered that the college would offer Skotnik three months' pay and three months' health insurance. Skotnik was informed of the offer and told Doulas that she accepted.

On February 4, 2014, Skotnik, Doulas, and Pryor met to review the resignation agreement, which had been e-mailed to Doulas and Pryor the day before. Doulas then called Duren and Harrington, who subsequently came to the meeting. Skotnik subsequently signed the resignation agreement in the presence of Pryor, Doulas, and a notary public. There are disputes of material fact about whether the agreement was ever explained to Skotnik, whether Pryor informed Skotnik of her grievance rights or refused to file a grievance, and whether Skotnik was denied the opportunity to contact an independent lawyer prior to executing the agreement.

**Legal Standard**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving

3

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In determining whether a genuine issue of material fact exists, this Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). However, "[m]erely alleging a factual dispute cannot defeat the summary judgment motion." *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir. 1989). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**Discussion**

A plaintiff can waive his or her federal statutory rights via a knowing and voluntarily executed release agreement. *See Pierce v. Atchison, Topeka and Santa Fe Ry. Co.*, 65 F.3d 562, 570 (7th Cir. 1995). Similarly, an employee's voluntary resignation is binding upon that employee, and therefore cannot constitute an unlawful termination, unless it is shown that the resignation was the result of coercion. *Alvarado v. Picur*, 859 F.2d 448, 453 (7th Cir. 1988).

MVCC has a strong case for upholding the validity of Skotnik's resignation agreement and waiver of claims. Skotnik, as a former union representative, was well-versed in the grievance process; she was represented by union officials; and the evidence suggests that she deliberately chose to enter into the agreement based on a calculated decision to ensure that her health insurance continued. That said, this Court has some reservations about Skotnik's competency to enter into the Agreement. The evidence before this Court, taken in Skotnik's favor, gives reason to believe that Skotnik was suffering from cognitive impairments and manifestations of her recognized psychological disability. The evidence also appears to suggest that MVCC was, or should have been, aware of these impairments during the meetings regarding Skotnik's termination. The Court's

4

concerns about this situation are compounded by the fact that MVCC allegedly threatened to withdraw the agreement if Skotnik did not immediately accept it.

The Court, however, need not decide whether or not the agreement between Skotnik and MVCC was valid. Assuming without deciding that the agreement was not binding, Skotnik has nevertheless failed to introduce evidence capable of supporting her claims on the merits. The Court accordingly turns to the merits of Skotnik's claims against the defendants.

Skotnik's complaint first claims that MVCC denied her a reasonable accommodation in violation of the Americans with Disabilities Act (ADA). In order to survive summary judgment on this claim, Skotnik must introduce evidence showing that (1) she is a qualified individual with a disability, (2) her employer was aware of her disability, and (3) her employer failed to reasonably accommodate that disability. *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005).

Here, Skotnik has failed—both in her complaint and in her response to the present motion—to identify any reasonable accommodation of her disability that was denied to her or to make any argument establishing that MVCC failed to reasonably accommodate her disability. Accordingly, Skotnik has waived that issue. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment.").

Skotnik also challenges her termination. Skotnik argues both that she was terminated based on her disability in violation of the ADA and that she was terminated in retaliation for filing her EEOC complaint in violation of the ADA. In order to prevail on her discrimination claim, Skotnik would need to introduce evidence showing that (1) she was disabled within the meaning of the ADA; (2) she was qualified to perform the essential functions of her job with or without accommodation; and (3) she was terminated because of her disability. *Hooper v. Proctor Health Care, Inc.,* 804 F.3d 846, 853 (7th Cir. 2015). Here, it appears to be uncontroverted that Skotnik suffers

from major depressive disorder and is therefore disabled within the meaning of the ADA. It also appears to be undisputed that Skotnik was qualified to perform the essential functions of her job. Accordingly, in order to prevail on her discrimination claim Skotnik need only point to evidence capable of establishing that she was terminated as a result of her disability.

Similarly, in order to prevail on her retaliation claim, Skotnik would need to introduce evidence showing that (1) she engaged in a statutorily protected activity; (2) her employer took an adverse action against her; and (3) that the protected activity is causally connected to the adverse employment action. *Gracia v. SigmaTron Int'l, Inc.,* 842 F.3d 1010, 1019 (7th Cir. 2016). It is undisputed that Skotnik's request for accommodations and EEOC complaint constituted protected activities and that her termination constituted an adverse action against her. Accordingly, both Skotnik's discrimination claim and retaliation claim turn on a common question of causation: whether there is evidence, taken in a light most favorable to Skotnik, from which a reasonable factfinder could conclude that Skotnik was discharged either as a result of her disability or as a result of her request for accommodations and EEOC complaint. Because Skotnik does not have direct evidence of causation (such as a statement directly establishing an improper motive) in either instance, both claims turn on the same body of circumstantial evidence and therefore can be considered together.

As an initial matter, Skotnik concedes that it is not her position "that the grounds for termination were insufficient." Instead, Skotnik attempts to establish, through circumstantial evidence, that there was a discriminatory or retaliatory motive behind her otherwise justifiable termination.

Many of Skotnik's arguments concern the process leading to her termination. Skotnik has presented evidence that MVCC had an escalating system of discipline, with verbal warnings, written warnings, suspensions, and terminations. Skotnik contends that MVCC "skipped" disciplinary steps

6

when it terminated her, and that this abnormal action demonstrates a discriminatory or retaliatory purpose. Skotnik, however, has not identified any evidence establishing that MVCC had a uniformly applied progressive discipline system, and there is evidence to suggest that other employees had been terminated directly after receiving written discipline or verbal discipline. Even if the college had violated its progressive discipline policy, moreover, that violation would be insufficient to establish pretext absent additional evidence suggesting that the deviation from the progressive discipline policy was itself motivated by improper factors. *Barakat v. Taco Bell, Inc.*, 970 F. Supp. 634, 640 (N.D. Ill. 1997) (Gettleman, J.) (citing *Anderson v. Stauffer Chem. Co.*, 965 F.2d 397, 403 (7th Cir. 1992)).

Skotnik also argues that her termination was based, in part, on a 2009 written warning that was issued as a result of falsified testimony. The evidence reflects that Skotnik's union representative was aware of the 2009 incident and took it into consideration when advising Skotnik during the termination proceedings. Skotnik, however, has failed to identify any evidence establishing that the 2009 warning contributed directly to her termination. Even if Skotnik's termination was based in part on the 2009 incident, moreover, that reliance would be incapable of establishing causation here unless there was evidence showing that MVCC was aware that the 2009 warning was based on false testimony. *See Wyninger v. New Venture Gear, Inc.,* 361 F.3d 965, 979 (7th Cir. 2004) (*quoting Hartley v. Wis. Bell, Inc.*, 124 F.3d 887, 890 (7th Cir. 1997)) ("The employer's explanation [for why it terminated an employee] can be 'foolish or trivial or even baseless' so long as the company 'honestly believed' in the reasons it offered for the adverse employment action.").

Finally, Skotnik asserts that MVCC's memoranda supporting Skotnik's termination were drafted after the decision to terminate her had already been made, suggesting bad faith and a potential cover up. On January 28, 2014, Associate Dean Lisa Bly e-mailed Skotnik's supervisor, Albert Lewis, listing performance issues with Skotnik including lack of initiative, memory loss, and

7

sporadic attendance. On the next day, Albert Lewis sent a memorandum to Andy Duren detailing areas where Skotnik's performance fell below expectations and recommending her immediate termination. The defendants concede that the decision to initiate termination proceedings against Skotnik occurred prior to these communications, given that the alleged pre-termination hearing that the defendants claim occurred was purportedly held on January 22, 2014.

These communications, however, did little more than memorialize already identified problems with Skotnik's performance. The reasons for Skotnik's termination (i.e. "disruptive, harassing, and unprofessional behavior", "leaving work without notification and/or permission", and "unsatisfactory performance") had already been set forth in Skotnik's Notice of Proposed Disciplinary Action and Pre-Disciplinary Conference, and were set forth again in the January 31, 2014 Notice of Termination. Although the communications in question further elaborated on those justifications, there is nothing to suggest that they were an improper attempt to provide justification for an otherwise unwarranted termination. Skotnik, moreover, does not present any evidence challenging the veracity of Bly and Lewis' communications. To the contrary, she concedes that MVCC had adequate reasons to terminate her. The timing of the communications in question is mildly suspicious, but that timing, absent more, does not support the conclusion that Skotnik's termination resulted from discrimination or retaliation.

Skotnik has made no effort establish that similarly situated employees received more favorable treatment, and therefore cannot establish discrimination or retaliation using the McDonnell-Douglas burden-shifting framework. And, as previously mentioned, Skotnik does not dispute that MVCC had an adequate reason to terminate her. Although Skotnik points to individual pieces of evidence that she contends call the motivation for her termination into question, the evidence, taken as a whole and taken in the light most favorable to Skotnik, is incapable of permitting a reasonable factfinder to conclude that Skotnik was retaliated or discriminated against.

8

**Conclusion**

For the foregoing reasons, the defendants' motion for summary judgment is granted.

IT IS SO ORDERED.

Date: September 26, 2017

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge